The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Please be seated. Good morning. Before we move on to regular business, we have something a little more pleasant and I'll turn to Judge Wallach for a couple of motions. May it please the court, I'm going to move the admission of two of my clerks. The first of them is Jonathan Darrow. Mr. Darrow has worked for me for almost two years. He is an upstanding and very well-educated and hardworking lawyer and I would move his admission to the bar of this court. I can certify that he is qualified. He's a member of the bar and in good standing with the highest court of California. I have knowledge of his credentials and I'm satisfied he possesses the necessary qualifications. We enthusiastically concur. My second motion is my other clerk, Luke Aziz, who has also worked for me for the last two years and who is another very hardworking, extremely bright Yale graduate and is highly qualified to be a member of the bar of this court and I move the admission of Luke Aziz, who is a member of the bar and is in good standing with the highest court of New York. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. Likewise, we're delighted to grant that motion as well. Please rise for the oath. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. I do. Welcome to the bar of the United States Court of Appeals. Congratulations. Congratulations, gentlemen. We're going to move a little out of order for just a preliminary matter and that is the third case set for argument is Nuvasiv versus Warsaw and perhaps there was a little confusion or difficulty given the holiday intervening. There was a motion made by appellant to withdraw from the case and is the appellant here? Mr. Tors? And I guess we granted your motion, but I guess the paperwork hasn't gone out because of the intervening holiday. So I appreciate very much that you came just in case, but we're going to deal with the other portion of the case in due course, but we wanted to release you if that's your prerogative right now. Thank you. First case for argument is 151845, Affinity Labs of Texas versus DirecTV. Mr. Morton. Good morning, your honors. May it please the court. Inventors Russell White and Kevin Hines identified a real world problem back in 2000. As the 379 patent explains, a person living in Houston may not be able to receive a radio broadcast signal from a radio station in Seattle. That particular example came from Mr. White's father who had moved from Seattle to Houston. The inventors came up with a concrete solution that allowed people to listen to regional broadcasts on the go, such as in your car. Now claim one of the 379 patent requires a machine including a network-based resource maintaining information associated with regional broadcast channels and an application available for over-the-air download to a wireless cellular phone that would cause the phone to present a graphical user interface or GUI with selectable regional broadcast channels that could be streamed to the wireless device. Now that solution is concrete and tangible. Although I'm willing to concede there's a lack of clarity perhaps in the jurisprudence on 101, we've got enough data points now for earlier cases so that we have some that we can look to in terms of similarity. And there are a number that are implicated in your case and most particularly in my mind is in the Internet patents case. So if you're familiar with that case, can you tell me how the holding here does not correspond to that? There we held the idea of retaining information in the navigation of online forms was abstract. How is your case distinguishable from what we held there? So certainly, Your Honor, there retaining the information in forms has something to do, I think, with basically data storage. And it is very difficult, as the Court kind of indicated, to understand what it is that makes an invention abstract that is not in the fundamental economic concept or mathematical algorithm category set forth by the Supreme Court. But it seems to have something to do with methods of organizing human activity. And some of the Court's jurisprudence, such as Internet patents, seems to go to that, that you're just storing data, storing documents. And in that case, I believe there was something about maintaining state while doing so, which was not described. But it's not clear from that case exactly what makes it abstract. If you move to this case, there's no abstraction. What you have here is servers, is how this would be implemented, with a network-based resource, as claimed, storing regional broadcast channels that can be selected. And again, a downloadable application that can be downloaded to a wireless electronic device for then accessing and playing that regional content. And there's nothing about that system, that machine, that is abstract. You said that there was a problem and that you solved the problem. But it strikes me, and you can explain why this is wrong, but just as a way of characterizing what we've got here, why isn't it fair to say that the problem that you confronted was the problem of conveying regional broadcasts to a device outside of the region for playing outside the region? And your solution is to convey the regional broadcast to a device outside the region with no technological intervening process explained. Why isn't that a fair characterization that you've announced that the solution to the problem is that you've solved the problem? Yes, Your Honor, I'll address that directly. So the way the problem is described and the way the technology existed at the time was that you could stream radio or other content on your home computer. Then you were tied to your home computer location. Your other option was to listen to whatever's on the radio in your car. So the problem that the solution has described, something that we're all familiar now, it's ubiquitous to say there's an app for that. But the app store didn't come out until 2008. This patent is in 2000. And on this record, there is no evidence of any application for any purpose whatsoever that is stored and maintained to be downloaded to a wireless device to then allow that device to do anything. In this case, it's to allow that device more specifically to present a graphical user interface with selectable items. It's not providing anything other than a computer program. An application is certainly implemented in software, Your Honor. The issue here is, again, choosing to do that, where to store it, and how to make it available. So if you look at... What is the how to make it available other than downloading an app? I mean, I don't see the how here. That's what's missing for me. You've got the what, but you don't seem to have the how. Well, to get that, Your Honor, first I would say the question of the how is a question of 112 support in the specification. We're, of course, here on a 101 motion. And that gets confused sometimes, and it got confused in this case by the district court. But aren't they related? Because if you don't have a how, that's part of the component that makes it an abstract idea. Well, first, I think there is a how. You have to read the whole specification. If you look how it's laid out, it describes an entirely new system that did not exist in 2000, where you use an electronic device at the center of your whole kind of media ecosystem. And the spec builds that up from general to specific. It starts with the electronic device, adds in communication protocols, how it's going to work, and eventually gets up to radio dial 412, which is in the specification, and what that can show and how that can be presented on different devices, and eventually gets to doing regional broadcast with that on a wireless electronic device. So the whole specification builds that up. And that question of whether there's 112 support, I'm sure defendants will bring that issue if we're back down at the district court. And we'll find it out there on a full record with expert reports, the inventor testifying, and I think we'll cover that just fine. And that was specifically part of the examination process in the file history, was explicitly finding 112 support for these claims. So to say that we can be here on the pleadings and decide that there's not 112 support in order to lead to a decision that there's a 101 subject matter eligibility problem I think is wrong. So moving from there to further into step one. What the Supreme Court has said you're supposed to do in Bilski and Alice is look for an abstract idea. They haven't said you have to overgeneralize to some broad purpose, which is what the district court did here following the Enfish decision, which has now been overturned. What the Supreme Court said you're supposed to do is look at all of the claim elements. If you look at all of the claim elements here, you can't say this is just disseminating broadcast outside of region. It's clearly not. And when you take that approach, you end up like the magistrate in this case saying, well, in every case, 95 to 98% of cases, he said, find an abstract idea. So he's going to find one too. That is contrary to what the Supreme Court has said. It doesn't make sense for this case. The second area of the district court was having established that to say, well, was that a longstanding commercial practice? Which the district court's view of that is was it in an old industry, something that's been around for a while? He said, well, broadcast out of region has been around in other things like cable, or he talked about watching gravestones. But an important concept for this court, I think the court should clarify, is that old does not mean abstract. The transistor radio was not abstract. TBS TV broadcast, not abstract. Cable TV, Internet radio, and now claim one of this patent are not abstractions. They don't exist in the ether. They're not contractual relationships. They don't bear any relation to that. And as I said, the problem was ignoring the claim elements, which again the court in Enfish said recently that you cannot do. There the district court had ignored the self-referential component of the database. Well, why don't you tell us what the court ignored here in terms of the claim elements? Here the court completely ignored, for instance, the downloadable application that can allow your electronic device to present not just any graphical user interface, but one with selectable items of regional broadcast channels that can then be streamed, limited to streaming, on the go. You don't make things clear. Why don't you just say software instead of downloadable application? Well, there are different claims in this case or maybe the next that talk about instructions, Your Honor. I'm using the words of the claim. The other thing that Enfish clearly said was stuff is not abstract just because it involves software or it involves hardware. And that's not what the Supreme Court ever said. And it's a wrong-headed approach to think, oh, we have a patent that's in the information age. We're going to start with the proposition that it's abstract and then move on to step two. Well, who said that? This district court didn't say that. The opposing counsel hasn't said that. Who said that? The district court, I think, is pretty close to saying that, saying 95% to 98% of courts find an abstract idea. So he was going to find one. And there's no methodology. If you apply the court's purpose test and long-standing commercial practice test, as we put in our brief, there's no way to stop that test being applied to all kinds of inventions beyond computers. We gave the example of the mousetrap to say, well, if you're going to improve mousetrap, that's just related to the abstract idea. I'm looking back through the magistrate's report where he says, so I'm going to find it that it's abstract. That colloquy, Your Honor, occurred at oral argument. So if I move to step two. And he said that. I was telling the court that his test was wrong. The purpose and long-standing commercial practice was wrong. And that if you apply that, you would find abstract ideas in pretty much every patent. And he said, well, isn't it the case that 95% to 98% of cases find an abstract idea? So I don't think he said, so I'm going to find one, Your Honor. But that was clearly the position. Didn't Alice mention commercial practice? I mean, we've seen commercial practice crop up in these cases before. Alice mentions it. I think DDR also did mention it affirmatively, but in the negative, said this is not long-standing commercial practice. So the court here didn't make that up. That is found in our case law, is it not? Right. There are many things in these cases where there are words, but they become misinterpreted in my view. So those words do come in about Bielski and Alice. Those obviously involved hedging and intermediated settlement. So you can't take that and say, well, that's talking about any long-standing technical industry. This case is about broadcast. Broadcast has never been abstract, like intermediated settlement, which has always been abstract. I'm going to go back and just put a comment into the transcript of this after the word misinterpreted and before in my view so that it doesn't come off looking like it's misinterpreted in your view. Appreciate it, Your Honor. I do say I'm into my rebuttal time. If the court wants more questions, I can answer them, but I would like to rebut. All right. Thank you. Mr. Weaver, please. Good morning, Your Honors. Your Honor asked a question at the beginning. Isn't this case like Internet patents? And doesn't the Internet patents case really control the decision? I think there are three decisions that are particularly close and relevant, and that is the Internet patents case, content extraction, and the more recent in-ray TLI case. And in fact, the more recent in-ray TLI case this court decided just a few months ago was not part of the briefing and frankly was not available to the district court or the magistrate judge below, nor was the Internet patents case available to the magistrate judge below. Nonetheless, in over 50 pages of very well-reasoned and thorough examination, the magistrate judge followed by the district court judge found that the claims at issue here did nothing more than claim the abstract idea of dissemination of regionally broadcast content to a user outside that region. And then the court found that that was a longstanding commercial practice. And again, Your Honor's question about didn't the Supreme Court itself talk about longstanding commercial practices? It absolutely did. It referred to the hedging concept in Bilski as a longstanding commercial practice. And what was the comparable longstanding commercial practice here? Here's a longstanding commercial practice. I think, Your Honor, you can look at it in two slices. The first longstanding commercial practice is frankly a fundamental business practice, and that is a business wanting to extend its market share outside of the initial geographic region. It's unremarkable and it's unquestionably longstanding. Now you move that to the longstanding commercial practice that the judges below found, and that is that broadcasting content and trying to seek to extend the range of your broadcast outside of that initial region is something that has been done since the beginning of broadcasting itself. Frankly, from the time of the beginning of communication between humans themselves. So I don't think that there's really any dispute that it's a longstanding practice. What was that in our record? I think that is something where if there was any judicial notice taken, if you will, it was a recognition, a general historical observation that this is true. And this court has done that in the past. For example, in the content extraction case, recognizing that banks for a long period of time had examined things such as their checks and pulled the data off of those checks and then stored that information. And so it was an unremarkable recognition of fact. What do you make of the argument that here the distinction between just the notion that there is an abstract idea of conveying broadcast information from one region to a device in another, here there's a specificity sourced at the downloadable application of the wireless device, which is claimed, at least in Claim 14? So a couple of points there, Your Honor. First, as this court has already recognized, it's software. And so wrapping some fancy words around it, calling it a downloadable application, is nothing more than you're going to put software on the device. Well, it's a little more than that, isn't it? I mean, downloadable certainly suggests a specific way of obtaining software. Not particularly, Your Honor. You have to get the software on whatever computer device you're doing. Right. And it is a very functional level of describing something. In fact, it was so functionally described that if the – Actually, in 14 it talks about an over-the-air download. So we're talking about a download that's different from going to CompUSA and buying a piece of software and loading it by a CD. Correct. Correct. So why isn't that specificity at least narrowing and being – giving us something of the how, so to speak? It doesn't give you the how because they simply state it as apply it on the cellular phone. Apply the abstract ID on the cellular phone. And then the basic rudimentary steps of apply it on the cellular phone is what this does. We know that it is not the how because they don't describe how it is actually downloaded onto the phone over-the-air. And you can look in the specification, in the patent specification, at A81. And if you look at column 11, lines 26 through 31, you'll see that they say the only time they mention this wireless download is a sentence fragment, Your Honor. It's not even an entire sentence. And it basically says that in an alternative embodiment, you could wirelessly send the app, not to the cellular phone, by the way, to the wireless device. Because whatever the wireless device is, whether it's a computer, which the patentee concedes, implementing this on a computer was already done at that time. And so this is just simply not just move the abstract idea to a computer, move it to a cellular telephone. And there is no how as to how you accomplish that objective. More importantly, that wasn't the problem that was identified by the patentee in carrying out its invention. The problem was getting the regional content outside of that region to users' devices. It was not the problem we're dealing with, how do we develop these apps? How do we download them? How do we accomplish that objective? Yes, but what you just said was that the problem was, I mean, everybody agrees what the problem was. And I think you just restated what your opposing counsel stated at the outset was the problem. The question is, is there anything more here than simply saying, here's a problem, I've noticed the problem, and I've solved the problem by asserting that I've solved the problem. And the solution is that I can now tell you the solution to the problem is to use a computer to affect the remote transmission of electronic signals. But my question is, isn't there more here, somewhat more here at least, by virtue of the identification of particular types of devices and a particular mode of enabling those devices to receive signals? I don't believe there's anything more particular here than simply saying apply it on a computer. And in fact, the TLI case is instructive in this as well. In the TLI matter, what you had was a wireless telephone, or a mobile telephone I think is what it was referred to in TLI. And the mobile telephone was going to have an image pickup unit, and then it was going to communicate with a server that had an image analysis unit and storage capabilities. So it had all of these components that were different sounding. And the court in TLI said simply saying apply these functional descriptions and do it on a mobile phone isn't going to save this claim because that's exactly what Parker v. Fluke and what the Supreme Court's decision in Alice both said. You can't simply say apply it on a cellular phone and save it. Or apply it on a cellular phone with software and save it. That doesn't carry the day. Particularly if, as the Internet Patents case recognized, there is no template as to how. How you're solving this problem beyond just, as Your Honor stated, recognize the abstract idea and say I'm going to apply it. If there are no further questions, Your Honors? Thank you. Thank you. Good morning again. If I could, I'd like to address step two and focus the court on the recent Ascom decision. So in that case, I think it confirms that a number of the district court's errors were in fact errors. First of all, the district court applied a technological arts test. That is not the test, and that was not in the Ascom decision. The district court also narrowed his broad idea when he got to the step two in order to take away some of the invention by adding that it was to an electronic device using cellular communication. And then, of course, the district court made numerous fact findings about what was routine and conventional on a Rule 12 motion contrary to the evidence that we put in. Was your expert's report? Is that what you're relying on? Yes, Your Honor. But I would say it was contrary to the file history, which said the downloadable application was novel, new, patentable, when provided to a cellular device. The expert declaration was pretty skimpy, I thought. It was what, four pages? Really only a couple of pages dealing with substance. Most of that seemed to be directed to essentially just reassertions. I didn't see much deep in that declaration. It was struck, and we objected to it being struck. But I wonder if there's anything in the expert declaration that you can point to that really is substance that goes beyond simply assertion. Well, it simply goes to what's routine and conventional as of the time, and a downloadable application period was not. And that should be enough. We're on a Rule 12 motion, and trust me, if we get farther into this case and get to develop a real record, I'm sure we'll have a longer expert declaration. But for now, simply that fact that that was not in any way routine and conventional, that application with the features as claimed, should be disposed of. And if you look at part of the Court's comment about, you know, the location and how we're providing this application, in Bascom, what you had was filtering content on the Internet. And it was conceded that there was filtering on your personal computer, there was filtering at the ISP, but there were drawbacks to both. And in a pact where it said we are using known filtering techniques, no new software, we're simply saying what you should do is have customized filtering at the ISP. That was found to pass Step 2. That was the inventive concept, because that was something, a new and different way of using old technology. Here, we have actually new technology, but also using it and putting it together in a new way with the location of this downloadable application that we're going to make available for a cellular device to download. So I think the Bascom case is just directly on point when it comes to that. I think we're getting over our time. If you have a final comment, I don't know if my colleagues have any further questions. Oh, we're counting up now. I see that. When the red goes on, you're done. When the red goes on, you're done. I'm sorry. So just to conclude, obviously, we would ask the Court to reverse and remand, because this idea is not abstract and there is an inventive concept, and the case should move forward like a normal patent case will. Thank you. We thank both of you.